DIAMOND HOMES, INC., Appellant, v. BODOVINAC and wife, Respondents.

*No. 242.   Argued May 5, 1969.—Decided June 3, 1969.*
(Also reported in 168 N. W. 2d 75.)

684

For the appellant there was a brief by *Usow, Teper & Weiss* of Milwaukee, and oral argument by *Herbert L. Usow*.

For the respondents there was a brief by *Charlton, Yanisch, Cain, Dieterich & Greco* of Milwaukee, and oral argument by *Richard F. Yanisch*.

HANLEY, J. The only two real areas of contention in this case involve (1) the water and sewer laterals beyond the lot line; and (2) the changes in grade to meet the city requirements. A third problem arises because we conclude that Diamond Homes incurs liability for the grade dispute: (3) What is the proper measure of damages?

## 1. *Water and Sewer Laterals.*

The evidence taken in this case clearly indicates that 30 feet of water and sewer laterals were laid between the house and the lot line.[2] The evidence further indicates that it was about 35 feet from the lot line to the city main. The record also shows clearly that the Bodovinacs paid for the 30 feet of sewer and water laterals as an extra charge to their construction agreement with Diamond Homes. The question which is not answered in the record is whether the Bodovinacs were entitled to any sewer and water laterals as part of the basic purchase price of the model home.

The trial court gave two reasons why Diamond Homes would have to bear the cost of installing the sewer and water laterals past the lot line. First, the offer to purchase which was drafted by Glen Yahnke contained a representation that the laterals were "to the lot line." Second, the Bodovinacs had already paid for 30 feet of sewer and water laterals as an extra on the building contract, and this charge must have been for the installation of the laterals from the lot line to the city main. To arrive at this second conclusion, the trial court must have assumed that the basic construction charge for the model home included sewer and water laterals from the house to the lot line.

We will first consider whether the record supports the trial court's conclusion that the Bodovinacs had already paid for the sewer and water laterals past the lot lines.

The basic price of the model home which the Bodovinacs wanted on their lot was $9,990. The building contract provided for the following "extras:"

[2] Not only does the testimony reflect that it was 30 feet from the house to the lot line, a scale drawing on Exhibit 9 clearly reflects that it was 30 feet from the base of the house east to the lot line. The laterals were laid in an easterly direction because the main was located in the middle of 112th street.

| "Building Permit & Survey | $100.00 |
| Crushed Stone Drive 16' x 30' | 100.00 |
| Sewer & Water Laterals 30' | 210.00 |
| Total Extras | $410.00" |

This building contract was signed on November 10, 1964, the same day that Glen Yahnke accompanied the Bodovinacs to look over the lot in question. On that same day, Glen Yahnke drafted the offer to purchase which stated that the sewer and water laterals were "to the lot line." The only reasonable conclusion from this evidence is that the basic purchase price of the model home did not include sewer and water laterals from the house to the lot line, and that the "extra" charge was for those sewer and water laterals. Such a conclusion is further supported by the scale drawing of the house on the lot which verifies that the distance between the east side of the house and the east lot line (where the sewer and water lateral had to be placed) varied between 29.98 feet and 30.08 feet.

Although the trial court specifically stated in his memorandum decision that

". . . the defendants [Bodovinacs] have paid for the additional 30 feet required, being the distance from the lot line to the sewer and water connecting point . . ." [3]

and although there is a specific finding of fact in this regard, there is no evidence to support this conclusion. Since the factual finding is contrary to the great weight

---

[3] It is practically undisputed in the record that it was 35 feet from the lot line to the city main. However, Mr. Richard Hitt, a city engineer for Wauwatosa testified that it was 34 feet. Based on his testimony the trial court stated that

". . . the distance from the lot line to the place where sewer and water laterals had to be connected was something less than 35 feet . . ." After determining that the distance from the lot line to the city main was less than 35 feet, the trial court stated that after paying for 30 feet, the Bodovinacs had no further obligation.

and clear preponderance of the evidence, it must be set aside. *Schroedel Corp. v. State Highway Comm.* (1968), 38 Wis. 2d 424, 433, 157 N. W. 2d 562.

We must now determine whether a statement in an offer to purchase amounts to a representation of an existing fact.

In holding that Diamond Homes was liable for the misrepresentation of its agent the trial court apparently was of the opinion that a real estate agent had a duty to ascertain the truth of statements contained in an offer to purchase. In fact, the trial court's opinion contained the following statement:

". . . Contracts for the purchase of land with respect to sewer and water laterals are drafted to show existing conditions so that prospective buyers will know what they are paying for. . . ."

We do not agree with the trial court's conclusion. Statements such as the one involved in this case are included in an offer to purchase so that the seller of the lot will have to disclose whether or not the laterals are in. If the seller crosses out "sewer and water laterals to lot line," then the buyer is put on notice of the actual conditions of the lot. If the seller signs the offer to purchase without crossing out the statement concerning the laterals, the seller becomes financially responsible for the accuracy of the statement.

Diamond Homes pointed out in its brief that its agents are always instructed to include the provision concerning sewer and water laterals in an offer to purchase to cast the burden of discovering the truth or untruth of the statement on the seller. Legally that is exactly the effect of the action. A realty agent is not responsible for the truth of statements contained in an offer to purchase. The trial court's finding that this statement was an actionable representation is contrary to the law and the facts and it must be set aside.

It follows then that Diamond Homes is entitled to recover the cost of installing the sewer and water laterals

from the lot line to the connecting point in the street. The total charge for this installation was $654.20. There was evidence that the Bodovinacs' approval of this extra work was not obtained prior to installing the laterals (as required by the contract). There was also evidence that the charge for the installation was reasonable. Either under the building contract or under a theory of *quantum meruit*, Diamond Homes was entitled to recover the cost of the laterals as an "extra."

### Changes in Grade.

The Bodovinacs counterclaimed in this action to recover certain costs they incurred and to recover for a loss in value of their home as a result of Glen Yahnke's misrepresentation that the model home was "suitable" for the lot which the Bodovinacs desired to purchase. Glen Yahnke contended that he only represented that the model home would "fit" on the lot. The trial court specifically found that Glen Yahnke represented that the home was "suitable" for the lot. There is credible evidence to support this finding.

The trial court then determined that a licensed realty agent held himself out as an expert and that Glen Yahnke should have investigated the grade requirements of the city involved before he rendered his judgment concerning the suitability of the home for the lot. The trial court found that Diamond Homes was liable for the innocent misrepresentation of suitability.

The trial court also stated in his memorandum opinion that the building permit specifically disclosed that it would be necessary to grade the lot, but that Diamond Homes built the home without doing the necessary grading and without pointing out the problem to the Bodovinacs.

Although the trial court grounded recovery on the misrepresentation of the realty agent, we think his legal theory that a realty agent holds himself out as an expert

on city building requirements is a borderline theory. We conclude that the recovery should have been based on the contract itself.

The building contract involved here provides:

". . . Work shall be performed in a manner acceptable to the Builder and *appropriate inspection authorities.*" (Emphasis supplied.)

The contract also provides:

". . . Said building(s) shall be completed in a good workmanlike manner in quality equal to the standard of the industry . . . ."

The grade of the lot had to be changed to obtain an occupancy permit. The city inspector insisted that the lot be graded to the specifications included on the building permit.

Although no evidence of industry standards was received at the trial, we doubt whether the building industry disregards city grading requirements.

The evidence clearly establishes a violation of the contract by Diamond Homes. Defendants are entitled to recover their damages.

### Measure of Damages.

Since Diamond Homes incurred liability because of the improper grading, it is necessary to review the contention that an improper measure of damages was applied.

The trial court permitted the defendants to recover the cost of properly grading the lot, the cost of constructing the retaining wall, the cost of constructing a fence along the retaining wall, and the diminution in value of the Bodovinacs' home caused by the improper grading. The only area of contention involved on this appeal is whether the $750 diminution in value was properly allowed as an item of damages. Diamond Homes does not argue that the loss in value was not a proper item of damages in this type of case. Clearly under *J. G. Jansen,*

*Inc. v. Rilling* (1931), 203 Wis. 193, 232 N. W. 887, the trial court was entitled to award damages both for costs of repair and diminution in value. However, Diamond Homes contends that the Bodovinacs never laid the proper evidentiary basis for an award based on diminution in value of the home.

Henry J. Wojcik, a real estate appraiser, qualified as an expert and testified for the Bodovinacs concerning the loss in value to the home even after all the repairs had been made. His testimony was that in the event "of a *future* sale" the present owner of the premises in question would suffer a loss of $750 to $1,000 because of the existence of the retaining wall condition. (Emphasis supplied.)

Frank Fry also qualified as an expert appraiser and testified on behalf of Diamond Homes. He testified that the retaining wall condition did "not substantially affect the value of the house."

The trial court specifically stated in his memorandum opinion that he found the testimony of Frank Fry incredible. Relying on the testimony of Henry Wojcik, he set the diminution in value of the home at $750.

The objection of Diamond Homes to this item of damages is that Henry Wojcik testified to future damages and not to the loss in value of the home as of the day the builder turned the home over to the buyer.

Henry Wojcik's testimony clearly showed that he considered the retaining wall condition a negative factor in figuring the worth of the Bodovinacs' property. It is true that he expressed his final opinion in terms of a future sale of the property, but it is also true that his testimony, taken as a whole, established a present loss in value of the property. The testimony was not so vague as to reduce the award of damages to conjecture or speculation, and the award is affirmed.

In accordance with this opinion, the judgment in favor of the defendants is modified by reducing it by $733.54, to allow the plaintiff the cost of the installation of the

laterals from the lot line to the mains ($654.20), plus interest ($79.34). Defendants are entitled to judgment in the reduced amount of $1,213.98.

*By the Court.*—Judgment modified as stated in the opinion and, as so modified, affirmed. No costs to be taxed.